**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **LARRY THOMAS, et al.,** | § | |
| | § | |
| Plaintiffs, | § | |
| vs. | § | Civil Action No. 3:12-CV-4941-M-BH |
| | § | |
| **BANK OF NEW YORK MELLON et. al,** | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the Special Order No. 3-251, this case was automatically referred for pretrial management. Before the Court for recommendation is *Defendants' Rule 12(B)(6) Motion to Dismiss Plaintiffs' Original Petition*, filed December 31, 2012 (doc. 13). Based on the relevant filings and applicable law, the motion should be **GRANTED.**

**I. BACKGROUND**

This action involves attempted foreclosure of real property located at 219 Shelby Lane, Grand Prairie, Texas 75052 (the Property). (doc. 3 at 1.)[1] On December 4, 2012, Larry and Deborah Thomas (Plaintiffs) filed this *pro se* suit against Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP (BONA) and Bank of New York Mellon f/k/a Bank of New York, as trustee for the benefit of the Certificate Holders of the CWABS, Inc. Asset-Backed Certificates, Series 2004-2 (BONY) (collectively, Defendants). (*Id.* at 2.) Plaintiffs' filings[2] expressly asserts a claim for suit to quiet title, and also appears to assert claims for fraud and wrongful foreclosure. (*See* docs. 3 at 1; 4 at 2–3.)

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[2] The allegations are taken from Plaintiffs' "Complaint" (doc. 3), and "Plaintiff's Original Verified, Motion for Temporary Restraining Order and Application for Temporary Injunction" (doc. 4).

Plaintiffs allege that they purchased the Property on or about December 19, 2003, and it has been in their possession ever since. (doc. 4 at 2.) To cover the purchase price, they obtained a loan from America's Wholesale Lender (AWL) in the amount of $227,800.00 and executed a promissory note and a deed of trust securing the note in its favor. (docs. 4 at 2, 6–18; 13-1 at 8–10.) Both the note and deed of trust named AWL as the "Lender." (docs. 4 at 6; 13-1 at 8–10.) The note stated that Lender, "or anyone who took [the] Note by transfer and who [was] entitled to receive payments under [the] Note [was] called the 'Note Holder.'" (doc. 13-1 at 8.) The deed of trust provided that the note "or a partial interest" in it, together with the deed of trust, could "be sold one or more times without prior notice to Borrower." (doc. 4 at 14.) The deed of trust designated Mortgage Electronic Registration Systems, Inc. (MERS) as the nominee for Lender and its successors and assigns and as the beneficiary under the deed of trust. (*Id.* at 7.) As Lender's nominee, MERS could exercise any and all of the interests "Borrower" (Plaintiffs) granted Lender, including the right to foreclose and sell the Property, and to take any other action required of Lender, "including, but not limited to, releasing and canceling the deed of trust." (*Id.* at 8.)

On June 8, 2011, MERS, as nominee for Lender and its successors and assigns, assigned the deed of trust to BONY. (doc. 13-1 at 32.) The assignment document identified MERS as the "holder of the Deed of Trust" and the "assignor." (*Id.*) It provided that "[f]or [v]alue [r]eceived," MERS conveyed to BONY "all beneficial interest under [the] Deed of Trust ... together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under [the] Deed of Trust." (*Id.*) The assignment was recorded with the Dallas County Clerk on June 10, 2011. (*Id.*)

Plaintiffs allege that "[a]s of Thursday, November 29, 2012, the [Property] remain[ed] in

2

default standing with the alleged Servicer, [BANA]." (doc. 4 at 3.) They claim that BONY lacks authority to foreclose on the Property because it is neither the mortgagee nor the servicer of their mortgage. (*Id.* at 2–3.) They also assert that prior to filing their suit, they "sought information and verification that [BONY] [was] a real party in interest to the loan underlying the foreclosure." (*Id.* at 3.) Despite their efforts, they were "unsuccessful in obtaining validation [that] [BONY] possesse[d] a valid and enforceable lien on the Property." (*Id.*) Moreover, BONA also lacks standing to foreclose because it failed to provide any evidence that it "is acting as an agent for a party that possesses a valid and enforceable lien on the Property." (*Id.*)

Plaintiffs expressly assert a quiet title claim against Defendants based on their alleged "superior" title to the Property. (doc. 4 at 2.) They also appear to assert a fraud claim, alleging that Defendants "have produced fraudulent documents to proceed with a foreclosure sale on the Property," as well as a claim for wrongful foreclosure. (*See* docs. 3 at 1; 4 at 3.) They seek a court order clearing their title to the Property, and a Temporary Restraining Order (TRO) and a temporary and permanent injunction to prevent Defendants from foreclosing on the Property. (doc. 4 at 3–4.) They request attorney's fees, damages, and pre- and post-judgment interest. (*Id.* at 4.)

## II. RULE 12(b)(6) MOTION

Defendants move to dismiss Plaintiffs' complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (doc. 13 at 5–10.)

**A.     Legal Standards**

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court

cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the

line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). "If . . . matters outside the pleading[s] are presented to and not excluded by the court," however, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

"Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs.*, 343 F.3d at 725. Lastly, it is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Accordingly, documents falling under these categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Here, Plaintiffs have attached to their complaint a copy of what they contend is the deed of

trust they executed in AWL's favor. (doc. 4 at 6–18.) This document is considered part of the pleadings. *See Katrina Canal Breaches Litig.*, 495 F.3d at 205. In addition, Defendants have attached to their motion to dismiss copies of what they claim are a special warranty deed granted to Plaintiffs in November 1999 by the previous owner of the Property, the deed of trust and promissory note Plaintiffs executed in favor of AWL in December 2003, MERS's recorded assignment of Plaintiffs' mortgage to BONY, and a default notice BANA mailed Plaintiffs on March 17, 2011. (*See* doc. 13-1.) Because the note and deed of trust are referenced in Plaintiffs' complaint and are central to their claims, they are considered part of the pleadings. *See Collins*, 224 F.3d at 498. Likewise, BANA's default notice is referenced in Plaintiffs' complaint and is central to their general theory of the case; it is therefore also considered part of the pleadings.[3] *See Collins*, 224 F.3d at 498. Lastly, the warranty deed and MERS's recorded assignment are matters of public record that can be judicially noticed in considering Defendants' Rule 12(b)(6) motion. *See Matter of Manges*, 29 F.3d 1034, 1042 (5th Cir. 1994) (taking judicial notice of "unimpeached certified copies of ... deeds and assignments"); *see also* Fed. R. Evid. 201(b)(2) (a court may take judicial notice of a fact when "it can be accurately and readily determined from sources whose accuracy cannot reasonably be disputed"). Because the documents attached to Plaintiffs' complaint and Defendants' motion to dismiss are either part of the pleadings or subject to judicial notice, conversion of the motion into a motion for summary judgment is unnecessary. *See Norris*, 500 F.3d at 461 n. 9.

**B.    Defendants' Authority to Foreclose**

According to Defendants, Plaintiffs' claims are premised on the "show-me-the-note" theory

---

[3] Plaintiffs assert that "[a]s of November 29, 2012," a few days before they filed suit, the Property (and by implication the loan) "remain[ed] in default standing with the alleged Servicer, [BANA]." (doc. 4 at 3.) In the default notice BANA allegedly mailed Plaintiffs on May 17, 2011, BANA advised Plaintiffs that "[t]he loan [was] in serious default because the required payments ha[d] not been made." (doc. 13-1 at 35.)

6

because they aver "that Defendants lack standing to foreclose because [they] [are] not the holder[s] of the Note." (doc. 13 at 5.) They contend that Plaintiffs' claims also appear to be based on the argument "that there is no assignment of record conveying the Deed of Trust to Defendant BONY" by part of AWL. (*Id.* at 7.) They argue that Plaintiffs' claims are subject to dismissal for three reasons: (1) their "show-me-the-note" theory is a "failed proposition of law" that has been consistently rejected by Texas courts; (2) upon MERS's assignment in June 2011, BONY became the note holder and mortgagee, and could therefore lawfully foreclose pursuant to Chapter 51 of the Tex. Prop. Code; and (3) BANA, as the "duly authorized mortgage servicer," could also foreclose on the Property pursuant to the Tex. Prop. Code. (*Id.* at 7–9.)

Plaintiffs allege that BONY lacks standing to foreclose because it is neither the mortgagee nor the servicer of their mortgage. (doc. 4 at 2.) They claim that BONY has failed to show that "it possesses a valid and enforceable lien on [the] Property" or that it "is a real party in interest to the loan underlying the foreclosure sale." (*Id.* at 3.) They argue that despite BANA's alleged status as the mortgage servicer, it also lacks standing to foreclose because it has not proven it is the "agent [of] a party that possesses a valid and enforceable lien on the Property." (*Id.*) These allegations do not seem to implicate the "show-me-the-note theory"; Plaintiffs do not assert that Defendants must produce the "original note" as a requisite to foreclosure.[4] (*See* docs. 3, 4.) Rather, their assertions

---

[4] "Advocates of this theory believe that only the holder of the original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure." *Wells v. BAC Home Loan Servicing, L.P.*, No. W-10-CA-00350, 2011 WL 2163987, at * 2 (W.D. Tex. Apr. 26, 2011) (citation and internal quotation marks omitted). The theory has been repeatedly rejected in this Circuit as having no merit. *Bennett v. JPMorgan Chase*, No. 3:12-CV-212-N, 2012 WL 2864751, at *3 (N.D. Tex. June 12, 2012), *rec. adopted*, 2012 WL 2864467 (N.D. Tex. July 12, 2012); *Cervantes v. U.S. Bank Nat'l Ass'n*, No. 3:12-CV-0661-D, 2012 WL 1605558, at *3 (N.D. Tex. May 8, 2012) (collecting cases). "Texas courts have refused to conflate foreclosure with enforcement of a promissory note." *Reardean v. CitiMortgage, Inc.*, No. A-11-CA-420-SS, 2011 WL 3268307, at *3 (W.D. Tex. July 25, 2011). Under Texas law, promissory notes and deeds of trust are distinct obligations that afford lenders distinct remedies upon default, "the note against the borrower and the lien against the real property." *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03-11-00644-CV, 2012 WL 3793190, at *3 (Tex. App.—Austin Aug. 30, 2012, no pet.) (mem. op.) (citation omitted). When the lender seeks a personal judgment against

7

appear to be a general challenge to Defendants' authority to foreclose. (*See* docs. 3 at 1; 4 at 2–4.)

### 1. *Authority to Foreclose in Texas*

"[T]he authority to conduct a foreclosure under Texas law is governed by an entity's relationship to the deed of trust, rather than the associated note." *Kramer v. Fannie Mae*, No. A–12–CA–276–SS, 2012 WL 3027990, at *7 (W.D. Tex. May 15, 2012) (citation omitted). In a typical mortgage lending contract, the "deed of trust gives the lender as well as the beneficiary [of the deed of trust] the right to invoke the power of sale" upon the borrower's default.[5] *Martins v. BAC Home Loans Servicing, L.P.* — F.3d — , No. 12-20449, 2013 WL 3213633, at *3 (5th Cir. June 26, 2013) (citation and internal quotation marks omitted). Where a deed of trust names MERS as the beneficiary of the deed of trust and "expressly provides for MERS to have the power of sale, then MERS has the power of sale." *Willeford v. Wells Fargo Bank, N.A.*, No. 3:12-CV-0448-B, 2012 WL 2864499, at *2 (N.D. Tex. July 12, 2012) (citation omitted). In that situation, as the "nominee for the originating lender and its successors and assigns," MERS also has the authority to transfer the power of sale by assigning the deed of trust. *Willeford*, 2012 WL 2864499, at *3; *Lamb v. Wells Fargo Bank*, NA, 3:12-CV-00680-L, 2012 WL 1888152, at *5 (N.D. Tex. May 24, 2012) ("[T]he Deed of Trust, on its face, grant[ed] MERS the right to sell and foreclose the property. Thus, contrary to [the plaintiff's] contention, MERS had the authority to transfer or assign the Note and Deed of Trust to [the defendant].") Accordingly, an entity who is neither the original lender nor

---

the borrower, it "must typically demonstrate that it is the holder of the note by producing the original wet-ink instrument." *Millet v. JP Morgan Chase, N.A.*, No. SA-11-CV-1031-XR, 2012 WL 1029497, at *3 (W.D. Tex. Mar. 26, 2012). By contrast, "[f]oreclosure is an independent action against the collateral" that "enforces the deed of trust, not the underlying note." *Reardean*, 2011 WL 3268307, at *3.

[5] Where real property is used as collateral for a loan, "the deed of trust secures [the] debt with a lien on the property" while the promissory note "evidences the debt" itself. *Kramer*, 2012 WL 3027990, at *7.

8

beneficiary of a deed of trust may acquire the right to foreclose on the mortgaged property by acquiring the deed of trust through a valid assignment.[6] *See Warren v. Bank of Am.,* N.A., No. 3:11-CV-3603-M, 2012 WL 3020075, at *4 (N.D. Tex. June 19, 2012), *rec. adopted*, 2012 WL 3024746 (N.D. Tex. July 24, 2012) (holding that upon the assignment of the deed of trust from MERS, the defendant "and its successors acquired [MERS's] rights to sell and foreclose on the property"). Notably, the assignment need not be executed by the lender to be effective, given that "Texas recognizes assignments of mortgages through MERS and its equivalents as valid and enforceable." *Martins*, 2013 WL 3213633, at *2.

Chapter 51 of the Texas Property Code governs the procedure for enforcing the "power of sale conferred by a deed of trust or other contract lien." Tex. Prop. Code Ann. § 51.002 (West 2007). Under the Code, both "a mortgagee[7] and [a] mortage servicer[8] may administer a deed of trust foreclosure without production of the original note." *Crear v. JP Morgan Chase Bank, N.A.*, No. 10-10875, 2011 WL 1129574, at *1, n. 1 (5th Cir. Mar. 28, 2011) (per curiam) (citing to Tex. Prop. Code §§ 51.0002, 51.0025). If the mortgagee is its own mortgage servicer, it may conduct a non-

---

[6] Plaintiffs' theory that BONY must produce "evidence" that "it possesses a valid and enforceable lien on [the] Property" prior to foreclosing appears to be based, at least in part, on their contentions that the deed of trust they executed in December 2003 specifically named AWL as the Lender, and they have "not conveyed [an] interest in the Property to any third party" ever since. (doc. 4 at 2.) To the extent Plaintiffs demand copies of a recorded assignment memorializing the transfer of their mortgage from AWL to BONY, as Defendants interpret the allegations in the complaint (*see* doc. 13 at 7), "recordation is not necessary for liens, deeds, or deeds of trust to be enforceable against the parties to those instruments." *See Bennett*, 2012 WL 2864751, at *4 (collecting cases).

[7] The Texas Property Code defines "mortgagee" as "the grantee, beneficiary, owner, or holder of a security instrument"; "a book entry system"; or "if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." Tex. Prop. Code Ann. § 51.0001(4)(A)–(C).

[8] A "mortgage servicer" is "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument." *Id.* § 51.0001(3). A mortgagee may be its own mortgage servicer. *Id.*

9

judicial foreclosure sale by following the procedures laid out in the Code.[9] *Martins*, 2013 WL 3213633, at *3. The mortgagee need not produce the original note because, as discussed, its authority to foreclose is determined solely by its relationship to the deed of trust. *Kramer*, 2012 WL 3027990, at *7. The Code also allows a mortgage servicer to administer the foreclosure sale on behalf of a mortgagee, as long as the two entities enter into a servicing agreement and provide the borrower with certain disclosures. *See* Tex. Prop. Code § 51.0025. As courts have noted, no provision of § 51.0025 "require[s] the mortgage servicer to be the 'holder' of the Note and Deed of Trust or to produce the original loan documents." *Sawyer v. Mortgage Elec. Registration Sys., Inc.*, No. 3-09-CV2303-K, 2010 WL 996768, at *3 (N.D. Tex. Feb. 1, 2010), *rec. adopted*, 2010 WL 996917 (N.D. Tex. Mar. 17, 2010); *see also Martins*, 2013 WL 3213633, at *3 (holding that "the mortgage servicer need not hold or own the note and yet would be authorized to administer a foreclosure"); *Darocy v. Chase Home Fin., LLC*, No. 3:10-CV-1259-L, 2012 WL 840909, at *10 (N.D. Tex. Mar. 9, 2012) (noting that § 51.0025 "contemplates that someone other than the holder of the original [loan documents] may lawfully foreclose on the security interest").

### 2. *Defendants' Authority*

Here, the deed of trust designated MERS as the "beneficiary" under the deed of trust, making it the original mortgagee. *See* Tex. Prop. Code § 51.0001(4)(A); (doc. 4 at 7).[10] The deed of trust also granted MERS, the nominee for Lender and its successors and assigns, the authority to invoke

---

[9] For instance, § 51.002(d) of the Tex. Prop. Code requires the mortgage servicer to provide to the debtor notice of default and intent to accelerate and to give the debtor an opportunity to cure the default within a minimum of 20 days. *See* Tex. Prop. Code § 51.002(d). If the mortgage servicer invokes the power of sale under the deed of trust, it must provide to the debtor notice of the time and place of the foreclosure sale at least 21 days prior to the date of the sale by posting notice in the county where the property is located, filing the notice with the office of the county clerk, and "serving written notice of the sale by certified mail on each debtor." *See id.* § 51.002(b).

[10] MERS also qualified as a mortgagee for the additional reason that "MERS is a book-entry system." *Martins*, 2013 WL 3213633, at *3; *see also* Tex. Prop. Code § 51.0001(1), (4)(B).

the power of sale and to exercise any and all of the interests that Plaintiffs granted Lender under the deed of trust. (doc. 4 at 7–8.) MERS could therefore foreclose on the Property upon Plaintiffs' default, and could also transfer that right to third parties by assigning the deed of trust. *See Willeford*, 2012 WL 2864499, at *3; *Warren*, 2012 WL 3020075, at *4.

Upon MERS's assignment in June 2011, BONY and its successors and assigns became the "the last person[s] to whom the security interest ha[d] been assigned of record", i.e., the mortgagee(s), and acquired all of MERS and Lender's interests under the deed of trust, including the right to invoke the power of sale upon Plaintiffs' default. *See Warren*, 2012 WL 3020075, at *4; *see also* Tex. Prop. Code § 51.0001(4)(C). As the mortgagee, BONY could elect to be its own mortgage servicer and foreclose on the Property in that capacity without needing to produce the promissory note.[11] *See* Tex. Prop. Code § 51.0001(3); *Martins*, 2013 WL 3213633, at *3.

BONY could also authorize BANA to service Plaintiffs' mortgage and foreclose on its behalf, so long as they established a servicing agreement and gave proper notice to Plaintiffs. *See* Tex. Prop. Code § 51.0025; *Martins*, 2013 WL 3213633, at *3. While Plaintiffs do not allege that they were instructed to send their mortgage payments to BANA, they essentially concede that BANA was their mortgage servicer because they state that "[a]s of Thursday, November 29, 2012," a few days before they filed suit, the Property (and by implication the loan) "remain[ed] in default standing with the alleged Servicer, [BANA]." (doc. 4 at 3.) Specifically, BANA's default notice stated that BANA "service[d] the home loan described" in the notice, and it advised Plaintiffs that

---

[11] Although not required by Texas law, BONY has produced a copy of MERS's recorded assignment, thereby establishing that BONY is the mortgagee. (*See* doc. 13-1 at 12–23.) It has also produced a copy of the promissory note executed by Plaintiffs, which was endorsed in blank by AWL's "managing director." (*See* doc. 13-1 at 8–10.) BONY has therefore demonstrated that it is also the "note holder." *See* Tex. Bus. & Com. Code Ann. §§ 3.201, 3.203, and 3.204 (West 2002) (providing the requirements for being the "holder" of a negotiable instrument).

the "loan [was] in serious default because the required payments ha[d] not been made." (*See* doc. 13-1 at 35.) As the mortgage servicer, BANA could foreclose on the Property without producing the note or deed of trust. *See Martins*, 2013 WL 3213633, at *3; *Sawyer*, 2010 WL 996768, at *3.

To the extent that Plaintiffs' claims are based on their allegation that Defendants lack authority to foreclose, their claims are subject to dismissal for failure to state a claim. *See Bennett*, 2012 WL 2864751, at *3–4 (dismissing wrongful foreclosure claim for failure to state a claim because it was based on the plaintiff's unsupported contention that the defendant "had no right to proceed with a non judicial foreclosure ..., or to provide notice of sale"); *compare Shelton v. Flagstar Bank, F.S.B.*, No. CIV.A. H-11-3805, 2012 WL 1231756, at *2 (S.D. Tex. Apr. 12, 2012) (denying the defendant's motion to dismiss where the plaintiff alleged that the defendant lacked authority to foreclose because it was neither the mortgagee nor the mortgage servicer *and* the defendant was "merely one of three possible contenders for the status of current mortgagee," "the attachments to [the plaintiff's] original petition indicate[d] significant confusion regarding the identity of the current mortgagee," and the identity of "the current mortgage servicer [was] likewise ... in doubt").

**C.     Suit to Quiet Title[12]**

Defendants move to dismiss Plaintiffs' entire complaint arguing that they have "failed to state a claim upon which relief can be granted with respect to Defendants." (doc. 13 at 9.)

A suit to quiet title, also known as a claim to remove cloud from title, "relies on the invalidity of the defendant's claim to property." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32,

---

[12] Although Defendants next address Plaintiffs' request for injunctive relief, Plaintiffs' substantive claims are considered first because their ability to obtain injunctive relief depends on their ability to plead a substantive cause of action. *See Jackson v. Fed. Home Loan Mortg. Corp.*, No. 4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011).

42 (Tex. App.—Houston [1st Dist.] 2011, no pet.). This suit "enable[s] the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right." *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (citation and internal quotation marks omitted). To prevail, a plaintiff must show that: (1) he has an interest in a specific property; (2) his title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable. *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 766 (N.D. Tex. 2012) (citing *U.S. Nat'l Bank Ass'n v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507, at *3 (Tex. App.—Houston [1st Dist.] Dec. 30, 2011, no pet.) (mem. op.)). The plaintiff "must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference." *Id.* at 766–67 (citing *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied)). Notably, the plaintiff must prove and recover on the strength of his own title, not on the weakness of his adversary's title. *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.).

Here, Plaintiffs assert that they are the "record" and "superior title holder[s]" to the Property. (doc. 4 at 2.) They allege that it "is undisputed" that they are and "have been in possession of the Property since purchasing [it] in 2003." (*Id.*) They contend that BONY has no interest in the Property because it is neither "the mortgagee nor ... the mortgage servicer," and that BANA has yet to prove it has an interest in the Property since it has failed to show it is the "agent [of] a party that possesses a valid and enforceable lien on the Property." (*Id.* at 2–3.) In essence, they claim having superior title to the Property vis-à-vis Defendants based on their contention that apart from the deed of trust they executed in AWL's favor in December 2003, they have "not conveyed [their] interest

13

in the Property to any third party that would extinguish [their] superior title interest." (*See id.* at 2.)

As discussed, the assignment document attached to Defendants' motion to dismiss negates Plaintiffs' allegation that BONY had no interest in the Property because it was not the mortgagee. (*See* doc. 13-1 at 32.) As to BANA, by virtue of its status as the mortgage servicer, BANA could enforce BONY's interests in the Property, as long as the requirements under Tex. Prop. Code § 51.0025 were met. Plaintiffs impermissibly rely on the alleged "weaknesses" of Defendants' interests rather than on the "strength" of their own title to the Property. *See Fricks*, 45 S.W.3d at 327. Because Plaintiffs base their quiet title claim on invalid legal theories and fail to sufficiently plead they have superior title to the Property vis-à-vis Defendants, this claim should be dismissed for failure to state a claim. *See Summers v. PennyMac Corp.*, No. 3:12-CV-01235-L, 2012 WL 5944943, at *3 (N.D. Tex. Nov. 28, 2012) (holding that the plaintiffs' quiet title claim "fail[ed] as a matter of law" because they "[did] not allege facts which, if proved, would establish their superior title; nor [did] they allege that they [were] current on their mortgage payments ... [i]nstead, they challenge[d] [the defendant's] title by arguing that [it] lack[ed] authority to enforce the Note at issue and foreclose on the property").

**D.     Common-Law Fraud**

As noted, Defendants generally contend that "Plaintiffs [have] failed to state a claim upon which relief can be granted with respect to the Defendants." (doc. 13 at 9.) Although not expressly listed as a claim, the allegations in Plaintiffs' complaint may be liberally construed as asserting a claim for common-law fraud. (*See* doc. 3 at 1.)

In Texas, the elements of common-law fraud are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the

14

defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032–33 (5th Cir. 2010)). A fraud claim is subject to the heightened pleading requirement of Rule 9(b). *See Potter*, 607 F.3d at 1032.

A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *McCall v. Genentech, Inc.*, No. 3:10-CV-1747-B, 2011 WL 2312280, at *3 (N.D. Tex. June 9, 2011) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)). Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

Here, Plaintiffs' fraud claim appears to be based on their theory that Defendants lacked authority to foreclose on the Property. Specifically, they assert that Defendants "have produced fraudulent documents to proceed with a foreclosure sale on the Property." (doc. 3 at 1.) Although Plaintiffs identify the "who", they fail to allege the "what, when, where, and why" with respect to

15

any fraud claim. *See Benchmark Electronics*, 343 F.3d at 724. For instance, they do not identify the specific documents produced by Defendants that were allegedly "fraudulent." To the extent Plaintiffs refer to the assignment, they fail to raise a reasonable inference that this document was invalid, and much less fraudulent, since "assignment[s] of mortgages through MERS ... [are] valid and enforceable." *Martins*, 2013 WL 3213633, at *2. Without more, Plaintiffs' allegations fail to meet the heightened pleading requirements of Rule 9(b).

Ultimately, Plaintiffs' allegations could not plausibly entitle them to relief because they do not allege that Defendants made a material, false representation *to them* upon which *they* relied to their detriment. *See Grisham v. Deutsche Bank Trust Co. Americas*, No. 4:11-CV-3680, 2012 WL 2568178, at *4 (S.D. Tex. June 28, 2012) (dismissing fraud claim for failure to state a claim where the plaintiff alleged that the defendant "committed fraud by manufacturing documentation to support its alleged ownership of the Note" but he did "not contend that [the defendant] made this material representation to *him*") (emphasis in *Grisham*). Plaintiffs' statement that they "sought information and verification" of Defendants' authority to foreclose but were "unsuccessful in obtaining [such] validation" fails to show any justifiable reliance on their part, and shows instead their attempt to dispute Defendants' purported fraudulent actions. Any fraud claim therefore fails under a Rule 12(b)(6) standard. *See Grisham*, 2012 WL 2568178, at *4.

To the extent Plaintiffs assert a claim for common-law fraud against Defendants, the claim should be dismissed under Rule 9(b) for failure to meet the rule's heightened pleading requirements, and under Rule 12(b)(6) for failure to state a claim.

**E.**     **Wrongful Foreclosure**

In connection with their request for a TRO and an injunction, Plaintiffs allege that

Defendants are "attempting to wrongfully foreclose" on the Property. (*See* doc. 4 at 3.) This allegation could be liberally construed as asserting a claim for "wrongful foreclosure."

The purpose of a wrongful foreclosure action is to protect mortgagors against mistake, fraud, and unfairness in foreclosure proceedings. *See In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001) (citing 30 Tex. Jur. 3d Deeds of Trusts and Mortgages § 177 (1998)). In Texas, "a debtor may recover for wrongful foreclosure when an irregularity in the foreclosure sale contributes to recovery of an inadequate price of the property." *Matthews v. JPMorgan Chase Bank, N.A.*, No. 3:11-CV-00972-M, 2011 WL 3347920, at *2 (N.D. Tex. Aug.1, 2011). The plaintiff must prove: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Hurd*, 880 F. Supp. 2d at 766 (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)). A procedural defect may occur when the foreclosing party either "fails to comply with statutory or contractual terms," or "complies with such terms, yet takes affirmative action that detrimentally affects the fairness of the foreclosure proceedings." *Matthews*, 2011 WL 3347920, at *2. Recovery is not available merely by showing a defect in the foreclosure process; "it is also necessary that there be an inadequate selling price resulting from the defect." *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp.2d 725, 729 (N.D. Tex. 2011) (Fitzwater, C.J.).

Apart from their allegation that Defendants are attempting to "wrongfully foreclose" on the Property, Plaintiffs' complaint does not state any facts supporting the elements of a wrongful foreclosure action. Given their request for injunctive relief to prevent Defendants from foreclosing on the Property (doc. 4 at 3–4), Plaintiffs cannot allege that the Property has been sold for a grossly inadequate price. Moreover, their contention that they are and "have been in possession of the

17

Property since purchasing [it] in 2003" (*id.* at 2) is fatal to any wrongful foreclosure claim since recovery for wrongful foreclosure "is based on the mortgagor's [lost] possession." *Everhart v. CitiMortgage, Inc.*, No. CIV.A. H-12-1338, 2013 WL 264436, at *7 (S.D. Tex. Jan. 22, 2013) (citing *Petersen v. Black*, 980 S.W.2d 818, 823 (Tex. App.—San Antonio 1998, no pet.) (holding that "[w]here the mortgagor's possession is undisturbed, he has suffered no compensable damage")); *Medrano v. BAC Home Loans Servicing, LP.*, No. 3:10–CV–02565–M (BF), 2012 WL 4174890, *3 (N.D. Tex. Aug.10, 2012) ("An attempted wrongful foreclosure is not an action recognized under Texas law."). Because Plaintiffs fail to state a claim for wrongful foreclosure against Defendants, it should be dismissed under Rule 12(b)(6).

**F.     Injunctive Relief**

Defendants contend that Plaintiffs are "not entitled to injunctive relief" because they have "failed to state a claim upon which relief can be granted." (doc. 13 at 9.)

"To obtain injunctive relief, [a] plaintiff is required to plead and prove, inter alia, 'a substantial likelihood of success on the merits.'" *Jackson*, 2011 WL 3874860, at *3 (citing *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)). Here, Plaintiffs seek a court order "quieting" their purported title to the Property, as well as a TRO and a temporary and permanent injunction to prevent Defendants from foreclosing on the Property. (doc. 4 at 3–4.) Because their substantive claims are subject to dismissal on the merits, they cannot establish any likelihood of success on the merits. *See Jackson*, 2011 WL 3874860, at *3. Plaintiffs' request for injunctive relief should therefore be denied.

### III. OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro*

18

*se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. A *pro se* plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal. *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at * 1. Nonetheless, courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, the defendant has specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the complaint. *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995). Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiffs have not amended their complaint since filing this action. Although they moved for an extension of time to respond to Defendants' motion to dismiss, and an extension was granted, they failed to file a response. (*See* docs. 15, 16.) Nevertheless, because it does not appear that Plaintiffs have stated their best case to the Court with respect to any of their claims, they should be accorded an opportunity to amend their complaint to sufficiently state a claim for relief.

### IV. RECOMMENDATION

If Plaintiffs do not file an amended complaint that states a claim for relief within the 14 days

allowed for objections to this recommendation, or a deadline otherwise set by the Court, Defendants' motion to dismiss should be **GRANTED,** and all of Plaintiffs' claims against them should be dismissed with prejudice. If Plaintiffs timely file an amended complaint, however, Defendants' motion to dismiss should be **DENIED as moot,** and the action should be allowed to proceed on the amended complaint.

**SO RECOMMENDED** on this 11th day of July, 2013.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE